UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD JOHNSTON, III,

        Plaintiff,

v.                                    Case No. 07-C-681

DR. RICHARD HEIDORN, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Johnson, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff is currently incarcerated at Green Bay Correctional Institution.

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner plaintiff is required to pay the statutory filing fee of $350.00 for a federal lawsuit. If a prisoner does not have the money to pay the filing fee up front, he or she can request leave to proceed *in forma pauperis* in order to pay the fee over time. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of twenty percent of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[1]

---

[1] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. He also filed the required affidavit of indigence. Further, he has been assessed and has paid an initial partial filing fee of $67.51. Upon review of the trust account statement and affidavit, I am satisfied that plaintiff is unable to pay the statutory filing fee in this case. Leave to proceed *in forma pauperis* therefore will be granted.

Next, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

All of plaintiff's claims involve what he alleges is inadequate treatment for an infection in his big toe. Plaintiff's toe became infected sometime in late 2006. In December 2006 it appears the infection had subsided, but the plaintiff began experiencing pain and bleeding again in late January 2007. He began writing a series of HSU requests and inmate complaints, and was seen by the prison's medical staff, including defendants Dr. Heidorn and Dr. Burnett. Heidorn recommended removal of the toenail, and that was accomplished on March 11. Plaintiff's only claim is that throughout this period he was never prescribed any medication to alleviate the severe pain he allegedly suffered.

Plaintiff has sued not just the prison doctors but the warden, William Pollard; the HSU manager, Jean Greenwood; Rick Raemisch, who is listed in the complaint as "Secretary Designee;" as well as individuals who reviewed his inmate complaints. The claims against these non-medical staff will be dismissed. Though plaintiff was clearly unhappy with his course of medical treatment, the record shows that he had been referred to, and treated by, medical professionals. The fact that it might have taken roughly one month for his toenail to be removed does not somehow reflect the deliberate indifference of any of these defendants. Moreover, none of these individuals were qualified to opine on the plaintiff's treatment given that each of them were aware that the plaintiff was under the care of a physician. As the Seventh Circuit has explained,

3

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005) (quoting *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004)).

If these defendants had deliberately ignored a physician's order to provide the plaintiff with pain medication, that would be one thing. But here, each of them were entitled to rely on the fact that the plaintiff had been referred to not one, but two, doctors. Apart from complaints calling for a clear and exigent course of treatment, it is not their responsibility to play doctor; there is simply nothing in any of the plaintiff's complaints or correspondence that would alert them to the severe nature of the pain the plaintiff is now claiming.

As for plaintiff's claims against the doctors, his only complaint is that he received no pain medication. Throughout his complaint, he repeatedly uses the passive voice (e.g., "no medication was given"), which could suggest that the plaintiff never actually requested pain medication. In any event, he did receive antibiotics and a special soap after an exam by Dr. Heidorn, who followed-up with a second exam on January 26. Heidorn recommended removal of the toenail, but already by February 6 the plaintiff was complaining that that procedure was being "delayed." In early March, referral was made to Dr. Burnett, the medical director, and the plaintiff's toenail was removed on March 11 or 12. Following the procedure, plaintiff was prescribed pain medication.

First, it is clear that any claims against Dr. Burnett must be dismissed. Apart from a referral in early March, the complaint fails to indicate Burnett's involvement in any of the plaintiff's treatment. Assuming he saw the plaintiff in early March (prior to or in relation to his toenail

4

removal), there is no indication that Burnett ignored any of the plaintiff's complaints of pain. The plaintiff received pain medication immediately following the toenail removal, and Burnett had no involvement in the plaintiff's treatment prior to then.

Finally, I conclude that the complaint fails to state a claim against Dr. Heidorn. Plaintiff was seen by Heidorn twice in January, and Heidorn prescribed antibiotics and a kind of soap that the plaintiff could soak his toe in. It was Heidorn's decision to order the toenail removed. Plaintiff complains that Heidorn told him the infection was "nothing to worry about," which might explain why no pain medication was given. But it is clear that the source of the plaintiff's § 1983 claim is simply a disagreement with his treating physician over the proper course of his treatment. The physician himself, the plaintiff concedes, believed the infection was "nothing serious" – which means that he lacked the requisite mental state for deliberate indifference because he did not disregard a known risk of injury. At best, the complaint suggests that Dr. Heidorn was wrong to underestimate the plaintiff's pain – it does not suggest that Heidorn consciously disregarded that pain. Accordingly, the complaint, at best, merely states a claim for negligence rather than deliberate indifference.

In sum, though the plaintiff is clearly frustrated with the several-week delay in having his toenail removed, his course of treatment equaled or exceeded the level of medical care to which most Americans have access. He was repeatedly seen by physicians, received in-patient surgery and medication. Prison complaint reviewers considered his claims and made appropriate recommendations in concert with HSU staff. Ultimately, Johnson simply had to wait several weeks to have his toenail removed, but during the wait he was on antibiotics to treat the infection. This set of circumstances, even if true, would not allow a reasonable factfinder to find deliberate indifference, and so the complaint will be dismissed.

**IT IS ORDERED** that plaintiff's request to proceed *in forma pauperis* is granted.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to twenty percent of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that this action is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that the clerk of court document that this inmate has brought an action that was dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that the clerk of court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

Dated this   12th   day of September, 2007.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge